

ERIC SEILER<br>
eseiler@fklaw.com<br>
212.833.1103

October 5, 2015

**BY HAND AND ECF**

The Honorable Shira A. Scheindlin
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York  10007-1312

        Re:   *MeehanCombs Global Credit Opportunities Master Fund, LP, et al.*
              <u>*v. Caesars Entertainment Corporation, et al.*, No. 14-cv-07091 (SAS)</u>

Dear Judge Scheindlin:

        On behalf of CEC, we write to oppose Plaintiffs' request for leave to move for partial summary judgment.  Plaintiffs' motion asks the Court to reconsider its prior determination that the Guarantee is not a "core term" under the TIA.  And Plaintiffs' arguments under the Indenture are inconsistent with the terms of the Indenture itself and with New York law.

        In denying summary judgment in *BOKF* and *UMB*, the Court rejected the argument urged by Plaintiffs here that the Guarantee is a "core term" that, under the TIA, cannot be modified without the consent of each noteholder.[1]  The Court ruled:

> Plaintiffs argue that the release of the Guarantee without their consent is "the kind of transaction that Section 316(b) was designed to prohibit."  But this proposition sweeps too broadly.  ***The case on which plaintiffs rely . . . recognizes that a guarantee release clause could, in some contexts, be invoked without violating section 316(b)***.

Op. at 24 (emphasis added) (citing *Marblegate Asset Mgmt. v. Educ. Mgmt. Corp.*, 75 F. Supp. 3d 592, 615-16 (S.D.N.Y. 2014)).  As the Court has made clear, its rulings on BOKF's and UMB's summary judgment motions are law of this case.[2]  Plaintiffs' assertion that the "August Transaction undisputedly amended a 'core term' . . . (*i.e.*, the right to receive payment under the Guarantee)," Ltr. at 2, cannot be squared with this Court's analysis in *BOKF* and *UMB*.  Nor can it be squared with the analysis in *Marblegate*, which recognized that core terms are those terms that govern the formal "right to sue" to enforce payment or

---

[1]  *See* Op. & Order, dated Aug. 27, 2015 in *BOKF, N.A. v. CEC*, No. 15-cv-1561 (SAS) ("*BOKF*") (Dkt. No. 54), and *UMB Bank N.A. v. CEC*, No. 15-cv-4634 (SAS) ("*UMB*") (Dkt. No. 61) (the "Op.").

[2]  *See* 5/26/15 Tr. at 34:13-16 (annexed as Ex. A) ("Legal issues resolved are  resolved . . . .  [T]hey become law of the case.  I won't revisit a legal ruling. . . .").

The Hon. Shira A. Scheindlin - 2 - October 5, 2015

"payment terms" such as principal, interest rate, and maturity.[3] The August Transaction did not modify Plaintiffs' right to sue for payment on their notes, or any of the terms governing the principal, interest or maturity date of the notes.

 The Indenture itself recognizes the very same distinction between payment terms and other terms of the notes. Section 902 of the Indenture expressly provides that CEC and CEOC cannot amend that agreement to "change the Stated Maturity of the principal," "reduce the percentage in principal amount," or "waive an Event of Default in the payment of" principal or interest—*i.e.*, it bars the modification of core terms—without unanimous noteholder consent. But the Indenture *does* allow for the amendment of its other terms, including the Guarantee, by majority vote. *See* Indenture § 902.

 Plaintiffs' argument that the two transactions in May 2014 whereby CEC's ownership interest in CEOC was reduced from 100% to 89% did not release the Guarantee under Section 1503(3) of the Indenture (which provides that the Guarantee is released if CEOC is no longer a wholly owned subsidiary of CEC) is contrary to the clear language of the Indenture and to New York law. Plaintiffs argue that Section 508 of the Indenture overrides Section 1503(3) because Section 508 characterizes the Guarantee as "absolute and unconditional" and because it states that the noteholders' rights to payment under that section exist "[n]otwithstanding any other provision in this Indenture . . . ." (Ltr. at 3.)

 But, as the courts—including one of the cases Plaintiffs themselves cite—make clear, "notwithstanding" clauses (or other contract terms) will not be construed to create a conflict with other terms of the instrument or to render other terms superfluous.[4] Here, this Court has recognized that a guarantee that is "unconditional" may be terminated according to the terms of an indenture. Therefore, even assuming that Plaintiffs' reading of Section 508 is correct—and we believe it is not—there is no conflict between it and the detailed provisions authorizing release of the Guarantee. As the Court noted in denying summary judgment in *BOKF* and *UMB*, "simply because a Guarantee may be easily terminated . . . does *not* indicate that the Guarantee was something other than an 'unconditional[] guarantee[] . . . of full and punctual payment when due.'" (Op. at 21-22.) As the Court recognized, the term "absolute and unconditional" protects Plaintiffs' right to payment under the Guarantee only insofar as the Guarantee confers that right. It does not mean that the Guarantee cannot be terminated, just that the Guarantee is unconditional while in force. Indeed, if Plaintiffs' view of Section 508 were correct, then the extensive provisions of Section 1503, entitled "Release of Guarantor," would be meaningless. New York courts will not adopt interpretations that make contractual provisions into surplusage.

---

[3] *Marblegate Asset Mgmt. v. Educ. Mgmt. Corp.*, 2015 WL 3867643, at *4 (S.D.N.Y. June 23, 2015); *accord* Jonathan C. Lipson, *Governance in the Breach: Controlling Creditor Opportunism*, 84 S. CAL. L. REV. 1035, 1054 (2011) (describing "core provisions" of a bond as those governing "maturity date, interest, [and] principal amount") (cited in *Marblegate*, 75 F. Supp. 3d at 614).

[4] *See Beardslee v. Inflection Energy, LLC*, 25 N.Y.3d 150, 158-59 (2015) (holding that "notwithstanding" clause did not "supersede all other clauses" and should not be read "in a manner contrary to the plain intent of the parties"); *see also Greylock Global Opportunity Master Fund Ltd. v. Province of Mendoza*, 2005 WL 289723, at *6-8 (S.D.N.Y. Feb. 8, 2005) (ruling that "notwithstanding" clause in bond indenture should not be read to render other terms surplus, and that one of the "hallmarks of contract interpretation" is that courts should "ensure that all terms . . . are given meaning and, where possible, that the meanings should mesh").

The Hon. Shira A. Scheindlin	- 3 -	October 5, 2015

*See LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 206 (2d Cir. 2005) ("An interpretation of a contract that has 'the effect of rendering at least one clause superfluous or meaningless . . . is not preferred and will be avoided if possible.'") (quoting *Galli v. Metz*, 973 F.2d 145, 149 (2d Cir. 1992)).  Moreover, even if Sections 508 and 1503 conflicted, that would at most create an ambiguity to be resolved by the finder of fact.[5]

   No more meritorious is Plaintiffs' claim that the Guarantee is still in effect because CEOC remains a "wholly owned subsidiary" of CEC that owns "substantially all" of CEOC's stock.  Plaintiffs concede that CEC owns only 89% of CEOC's equity.  Plaintiffs rely on FASB guidance relating to "push-down accounting" in arguing that CEC should be deemed to own "substantially all" of CEOC as long as it retains an 80% or greater equity stake in it, *see* Ltr. at 3.  But they fail to explain why guidance on a convention governing how a parent accounts for the purchase of a new subsidiary is germane to any reading of the Indenture.  They also fail to disclose that the SEC and FASB recently abandoned "substantially all" as the touchstone for application of push-down accounting.[6]  Plaintiffs also disregard decisional law stating that the concept of "substantially all," when applied to ownership of corporate assets, involves a mix of quantitative and qualitative factors, and is not amenable to resolution on summary judgment.[7]

   We look forward to addressing these issues further at the conference on October 7.

            Respectfully,

            Eric Seiler

cc: All Counsel of Record (by ECF)

---

[5] *See Hoyt v. Andreucci*, 433 F.3d 320, 331 (2d Cir. 2006) ("Where . . . the meaning of a . . . provision is ambiguous and the intent of the parties cannot be determined from the . . . language itself, the ambiguity presents a question of fact to be resolved by a jury.").

[6] *See* SEC, SAB No. 115, 2014 WL 6480285 (Nov. 18, 2014) (rescinding previous guidance); FASB No. 2014-17 at 22 (Nov. 2014) (finding that use of "substantially-wholly-owned" as a test was "not appropriate because it . . . would be challenging to define as a conceptually sound, effective and operable principle").

[7] *See, e.g.*, *In re Nantucket Island Assoc. Ltd. P'ship Unitholders Litig.*, 810 A.2d 351, 370 (Del. Ch. 2002) (holding that court's discretion to rule on summary judgment whether a sale "involved 'substantially all of the assets'" was "necessarily constrained").